Present:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and Goodwyn, JJ., and Russell, S.J.

COMMONWEALTH OF VIRGINIA

OPINION BY
v.  Record No. 071654            JUSTICE LAWRENCE L. KOONTZ, JR.
                                          October 31, 2008
MARVIN DARRYL GARRETT

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
William D. Hamblen, Judge


    This is an interlocutory appeal from a civil proceeding brought by the Commonwealth under the Sexually Violent Predators Act (SVPA), Code § 37.2-900 et seq., seeking to have Marvin Darryl Garrett committed as a sexually violent predator.  We consider whether the circuit court correctly ruled that Code § 16.1-306, as applicable to Garrett, prohibited the Commonwealth's use in the SVPA proceeding of records relating to proceedings involving Garrett in a juvenile and domestic relations district court when he was a minor.  We further consider whether the circuit court erred in ruling that the Commonwealth's mental health expert would not be permitted to express an opinion based, in part, upon her consideration of criminal conduct of which Garrett had been accused when he was a minor, but which was not prosecuted on the Commonwealth's motion for nolle prosequi.

BACKGROUND

Because this interlocutory appeal is limited to reviewing two discrete rulings of the circuit court, we will recite only those undisputed facts necessary to our resolution of this appeal. Dagner v. Anderson, 274 Va. 678, 681, 651 S.E.2d 640, 641 (2007). In 1993, Garrett, born on December 5, 1967, was convicted of rape of an adult and sentenced to twenty years in prison. Prior to the date of his scheduled release from prison in December 2006,[1] Garrett was screened by the Virginia Department of Corrections (VDOC) and was identified, based upon standardized tests, as a potential sexually violent predator likely to reoffend upon his release from confinement. VDOC referred Garrett's case to the Office of the Attorney General for consideration of whether to seek his civil commitment under the SVPA.

Dr. Ilona Gravers, a licensed clinical psychologist, was designated by the Commonwealth to perform a mental health examination of Garrett to determine whether he met the statutory criteria for a sexually violent predator. The

---

[1] In addition to serving his sentence for the rape conviction, Garrett was serving sentences for other felony convictions. Although Garrett had completed his sentence for the rape conviction prior to his scheduled release date, he remained subject to evaluation for civil commitment under the SVPA. Code § 37.2-903(B). Cf. Townes v. Commonwealth, 269 Va. 234, 240-41, 609 S.E.2d 1, 4 (2005).

Commonwealth made available to Dr. Gravers records detailing Garrett's criminal and prison history. Included in these records were files of proceedings in the Prince William County Juvenile and Domestic Relations District Court (hereafter, J&DR court) involving delinquency petitions brought against Garrett when he was under the age of eighteen.

The J&DR court records revealed that, in addition to various nonsexual offenses, Garrett, while a teenager, had been the subject of petitions charging him with three counts of having carnal knowledge of a minor. These records indicated that all three of the petitions had been dismissed without adjudication upon the Commonwealth's motion for nolle prosequi. During his interview with Dr. Gravers, Garrett stated that he did not commit the alleged offenses. Based upon her interpretation of the records, Dr. Gravers concluded in her written evaluation that while there was "no official version of these charges . . . Mr. Garrett was placed in aftercare as a result" of the allegations having been made. Dr. Gravers diagnosed Garrett's mental condition as including "Paraphilia, Not Otherwise Specified . . . Sexual Abuse of Child." Garrett's adult criminal record did not include any charges of sexual abuse of a child, and the only adult offense of a sexual nature was the rape conviction.

Based upon Dr. Gravers' evaluation and Garrett's scores on the standardized tests used by VDOC to determine the likelihood that a prisoner will commit further violent sexual crimes upon release, on October 26, 2006, the Commonwealth filed a petition in the Circuit Court of Prince William County seeking to have Garrett committed as a sexually violent predator. Dr. Gravers' report, which included extensive details of the non-sexual offenses committed by Garrett as a juvenile, was appended to the Commonwealth's petition.

On January 30, 2007, the circuit court conducted a hearing pursuant to Code § 37.2-906 to determine whether there was probable cause to find that Garrett was a sexually violent predator. Dr. Gravers, the Commonwealth's only witness, testified that her diagnosis of Garrett and her opinion that he met the statutory criteria for a sexually violent predator were based not only on Garrett's performance on the standardized tests and his single conviction for rape, but also on the allegations of the carnal knowledge offenses and the other nonsexual offenses contained in the J&DR court files pertaining to Garrett. According to Dr. Gravers, she considered the petitions charging Garrett with unlawful carnal knowledge to be significant even though the petitions had been dismissed because

4

> clinicians know that many charges tend to get pled
> down or through the criminal justice system might
> get nol prossed, parts of plea bargaining. . . .
> [T]he charges frequently are actually representative
> of the actual behavior, while the conviction may not
> necessarily represent the actual behavior that took
> place.

Dr. Gravers further testified that she also considered the nonsexual offenses in Garrett's juvenile and adult records, including offenses that had been dismissed by nolle prosequi, in reaching her diagnosis that Garrett had an "Antisocial Personality Disorder," which in her opinion increased the likelihood that he would commit further acts of a sexually violent nature. At the conclusion of the probable cause hearing, the court ruled that "the evidence adduced by the Commonwealth is sufficient to carry the burden of proof in this matter" and subsequently entered an order to that effect.

In anticipation of a subsequent trial on the merits of its petition to civilly commit Garrett pursuant to Code § 37.2-908, the Commonwealth, during the January 30, 2007 hearing, informed the circuit court that it "need[ed] to get records from the Department of Juvenile Justice regarding Mr. Garrett's behavior and treatment" while in the department's custody. The Commonwealth requested that the court enter an order for delivery of those records pursuant to Code § 16.1-300. The circuit court entered an order directing the department to provide the Commonwealth with copies of all

records in its possession pertaining to Garrett.  In response to that order, the department advised the Commonwealth that other than a file index card, "[a]ll other files [pertaining to Garrett] have been destroyed."  The Commonwealth forwarded a copy of the department's response to Garrett's counsel.

Thereafter, pursuant to Code § 37.2-907, the circuit court appointed Ronald M. Boggio, Ph.D., a licensed clinical psychologist, to assist Garrett in his defense.  In his subsequent report evaluating Garrett, Dr. Boggio also relied upon information in Garrett's juvenile records, which had been supplied to him by the Commonwealth, including the three carnal knowledge petitions that had been dismissed on the Commonwealth's motion for nolle prosequi.  However, Dr. Boggio disputed Dr. Gravers' characterization of the available records as indicating that Garrett had been placed in aftercare as a condition of the dismissal of the petitions. Rather, he interpreted the records as indicating that Garrett had been placed in aftercare on an unrelated petition and the notation in the file merely indicated that this status continued following the dismissal of the carnal knowledge petitions.[2]  Dr. Boggio concluded that Garrett did not meet the

_____

[2] Ultimately, the circuit court reached a similar interpretation of these records.

statutory criteria for classification as a sexually violent predator.

On May 3, 2007, Garrett filed a motion in limine seeking to bar the Commonwealth from introducing documentary evidence or testimony concerning "any facts, or circumstances of any charge, or conviction of [Garrett] as a juvenile," including Dr. Gravers' opinion to the extent that it relied upon those records. Relying on the response to the circuit court's January 30, 2007 order by the Department of Juvenile Justice, Garrett initially contended that the original records had been "destroyed" and, thus, the records the Commonwealth had obtained were unauthenticated and should be excluded as "hearsay." However, without specifying the source, the Commonwealth established that it had acquired copies of "numerous court documents (including Petitions, social histories authored by probation services, and a letter regarding a psychological evaluation) and at least one police report which document Mr. Garrett's juvenile criminal history." Although those documents detailed the nature of the allegations of unlawful carnal knowledge against Garrett, they did not contain any information regarding the Commonwealth's decision not to prosecute Garrett on those charges. The Commonwealth provided copies of these records to Dr. Gravers and Dr. Boggio and advised Garrett that it intended to

7

introduce these records at trial. Dr. Gravers indicated that the information in these records was consistent with and did not alter her previous opinion regarding Garrett. Following a hearing, the circuit court deferred ruling on Garrett's motion in limine.

On June 12, 2007, at the outset of the trial on the Commonwealth's petition to civilly commit Garrett as a sexually violent predator, the circuit court again considered Garrett's motion in limine. The court ruled that it would exclude all references to the three carnal knowledge petitions. The court concluded that "whether offered for their truth, or for some other purpose related to their perceived clinical significance, the probative value of the specifics of the allegations is well outweighed by their tendency to unduly prejudice the jury in this matter." The circuit court further concluded that despite no evidence of a finding of guilt, Dr. Gravers assumed in her report that Garrett had committed the carnal knowledge offenses. Accordingly, the court ruled that Dr. Gravers' opinion, as expressed in her report that addressed the excluded evidence, also would be excluded in its entirety. The Commonwealth objected to the court's rulings, contending that the newly discovered records regarding the charged offenses supported Dr. Gravers' assumption that Garrett had committed the

offenses, and that her opinion as expressed in her report should not be wholly excluded as it was based on her full evaluation of Garrett and was not dependant upon Garrett's guilt of the juvenile sexual offenses.

Responding to the Commonwealth's objection, Garrett conceded that his prior assumption that the J&DR court records obtained by the Commonwealth were not original documents was in error. Garrett contended, however, that those records should have been expunged and destroyed pursuant to Code § 16.1-306 and, therefore, Dr. Gravers should not be permitted to base her opinion on any of those records.

In support of this position, Garrett proffered to the court a document from Garrett's J&DR court records styled "Notice of Rights to Destruction of Records," signed by Garrett on July 29, 1980. As relevant to this appeal, that notice advised Garrett that records pertaining to J&DR court proceedings against him "will be destroyed automatically" once Garrett had reached the age of nineteen and "[f]ive years ha[d] passed since the last proceeding [involving Garrett] was disposed of by the Juvenile and Domestic Relations District Court." The notice further advised that "such records shall not be destroyed until twenty years have passed since the last proceeding was disposed of by the Juvenile and Domestic Relations District Court if [Garrett] was found not innocent

9

of a delinquent act which would be a felony if committed by an adult."[3]  A further document proffered by Garrett showed that the last proceeding involving Garrett in the J&DR court occurred on December 23, 1985, shortly after Garrett's eighteenth birthday, in which the court upon "[r]eview of [his] Status" directed that Garrett's file be "closed."

Upon motion of the Commonwealth, the circuit court continued the scheduled trial and deferred making a final ruling on either the admissibility of Garrett's J&DR court records or Dr. Gravers' opinion as expressed in her report. The parties were directed to submit briefs on both issues.

Following receipt of briefs and numerous supporting exhibits, the circuit court conducted additional hearings on the motion in limine.  The positions of the parties as detailed in those briefs and in the argument presented during the hearings are essentially parallel to the positions they have taken on brief and in oral argument of this appeal.  We will recount these hereafter in our analysis of the issues presented in this appeal.

Ultimately, on June 29, 2007, the circuit court entered an order ruling that "the opinion(s) of Dr. Gravers must be

---

[3] It is not disputed that as a juvenile Garrett was adjudicated not innocent of an offense that would have been a felony if committed by an adult.

excluded from the trial in this matter." By reference, the court adopted as the rationale for this ruling Dr. Gravers' reliance on the three dismissed carnal knowledge petitions as stated on the record in the June 12, 2007 hearing. The Commonwealth filed a motion for reconsideration, contending that Dr. Gravers' opinion was not based upon the details of those offenses, which were not known to her at the time of her initial diagnosis, but rested primarily on admissible evidence including the standardized tests, her interview with Garrett, and his adult criminal history.

On July 27, 2007, the circuit court entered an order excluding the "admissi[on] and/or utilization of [Garrett's] juvenile records." The court expressly ruled "[t]hat the version of Virginia Code § 16.1-306 which is controlling to this issue is that which was in effect during the period of 1980 and 1985," and that the statute "conferred upon [Garrett] a Fourteenth Amendment due process right to the scheduled destruction of his juvenile records." Determining that this right could not be altered by any subsequent amendment of Code § 16.1-306, the court further ruled that Garrett's J&DR court records should have been expunged and destroyed in 2005 and, thus, were inadmissible for any purpose in any subsequent proceeding. By separate orders of the same date, the circuit court denied the Commonwealth's motion for reconsideration of

11

its ruling excluding Dr. Gravers' opinion and certified this interlocutory appeal to this Court to address these rulings.[4]

DISCUSSION

The Commonwealth contends that the circuit court erred in ruling that any use of Garrett's J&DR court records would violate a vested right and that, even if Garrett had such right, the court nonetheless erred in excluding Dr. Gravers' opinion as expressed in her report in its entirety. The first of these issues, arising from the court's interpretation and application of Code § 16.1-306, presents a question of law that we will consider under a de novo standard of review. Shivaee v. Commonwealth, 270 Va. 112, 119, 613 S.E.2d 570, 574 (2005). The second issue, arising from a decision on the admissibility of an expert opinion, is subject to review only for an abuse of discretion. Commonwealth v. Miller, 273 Va. 540, 549, 643 S.E.2d 208, 213 (2007).

The principal focus of the parties' disagreement over the circuit court's interpretation and application of Code § 16.1-306 is whether the court erred in finding that the statute

_____

[4] There is no merit to the Commonwealth's assertion that Garrett took inconsistent positions in support of his motion in limine and, therefore, waived the issue of the application of Code § 16.1-306 on appeal. The record clearly indicates that the circuit court addressed the Code § 16.1-306 issue in a manner to specially preserve that issue for appeal. Accordingly, we take no further notice of the Commonwealth's assertion of waiver here.

12

provides a juvenile defendant with a vested right to the expungement and destruction of records related to proceedings in the J&DR court at the time of the juvenile's last contact with the court and, thus, the timing for the destruction of Garrett's juvenile court records was controlled by the statute as it was in effect in 1985. The Commonwealth contends that even if the statute is intended to convey a right upon a juvenile defendant to have his J&DR court records expunged and destroyed, that right does not vest until the presumptive date for expungement and, thus, the intervening amendments to Code § 16.1-306 could change the conditions under which that right would vest or eliminate that right entirely. As relevant to Garrett, the Commonwealth asserts that intervening amendments to the statute first altered the presumptive date for expungement and destruction, but ultimately, under the current version of the statute, eliminated entirely the possibility that Garrett's J&DR court records would be subject to expungement and destruction.

Garrett contends that the circuit court correctly determined that Code § 16.1-306, as in effect in 1985, provided him with a vested right to the expungement and destruction of his J&DR court records. Garrett maintains that as applicable to him, Code § 16.1-306 "provided for no possible preservation of [his] record[s] beyond 20 years" from

13

the date of his last J&DR court proceeding and, thus required

the expungement and destruction of his J&DR court records "on

or about December 23, 2005."[5]  Accordingly, Garrett contends

that the circuit court correctly determined that permitting

the Commonwealth to use his J&DR court records in the SVPA

proceeding would constitute a violation of a right afforded by

the statute.

Our analysis in this case necessarily begins with an

examination of Code § 16.1-306 as it was in effect during the

time that Garrett was subject to the jurisdiction of the J&DR

court and the subsequent amendments enacted that altered the

statute.  Garrett's first contact with the J&DR court was on

March 15, 1978 when a petition alleging that he had committed

simple assault was filed.  Code § 16.1-306, which had been

enacted in 1977, then provided:

> Expungement and sealing of court records.
> A.  Notwithstanding the provisions of § 16.1-304,
> the clerk of the juvenile and domestic relations
> district court shall, on January second of each year
> or on a date designated by the court, destroy its
> files, papers and records connected with any
> proceeding in such court, if such proceeding was
> with respect to a child, and such child has attained
> the age of nineteen years and five years have
> elapsed since the last proceeding was disposed of by
> the courts; provided, however, such records shall
> not be destroyed if the child was found not innocent

---

[5] The parties do not contest that December 23, 1985 is the relevant date for determining when the "last hearing" occurred in the J&DR court pertaining to Garrett as contemplated by Code § 16.1-306 as in effect in 1985.

14

of a delinquent act which would be a felony if committed by an adult. . . .

B.   The remainder of the records held by the court of juveniles who have attained the age of nineteen and five years have elapsed since the last proceeding was disposed of by the courts shall be sealed.  Such records shall be available for inspection only by a juvenile court, general district court or circuit court sentencing a person for conviction of any criminal offense and by the person on whom the record is kept.

C.   A person who has been the subject of a delinquency petition and whose records fall within the provisions of subsection B hereof may, after ten years since the last proceeding was disposed of by the juvenile court, file a motion requesting the destruction of all records pertaining to his case.  Notice of such motion shall be given to the Commonwealth's attorney.  After a hearing on the matter, if the court grants the motion, copies of the order shall be sent to offices or agencies that are repositories of such records, and all such offices and agencies shall comply with the order.

D.   A person found guilty of a charge of delinquency shall be notified of his rights under subsections A and C of this section at the time of his or her dispositional hearing.

E.   All records sealed pursuant to subsection B hereof shall be destroyed twenty years from the date of the last proceeding in the juvenile court.

F.   Upon destruction of the records of a proceeding as provided for in subsections A and C, the violation of law shall be treated as if it never occurred.  All index references shall be deleted and the court and law enforcement officers and agencies shall reply and the person may reply to any inquiry that no record exists with respect to such person.

G.   The court shall notify all pertinent agencies and the circuit court of the destruction of records provided for in subsections A and C.  Such agencies

15

and circuit courts shall also destroy any records
they have in connection with the same proceeding.

Code § 16.1-306 was subsequently amended in 1979 by two Acts of the General Assembly, and it was this version of the statute that was in effect when the petitions charging Garrett with carnal knowledge of a minor were filed in 1981. As relevant here, the first 1979 amendment altered the calculation of the five year period designated in subsection A and the twenty year period designated in subsection D so that those periods would commence on the "date of the last hearing in any case of the juvenile" rather than the date the "last proceeding was disposed of by the courts." 1979 Acts ch. 736.

The second 1979 amendment to Code § 16.1-306 added a new provision, subsection C1, which permitted an individual to petition at any time for the expungement of the records of offenses which would not be felonies if committed by an adult and for which the individual was found to be innocent or where the "petition was otherwise dismissed." Such petition for expungement was to be granted "[u]nless good cause [was] shown why such records should not be destroyed." 1979 Acts ch. 737.

The same amendment altered subsection D of Code § 16.1-306 to provide that notice of the "rights" provided for in the statute was to be given to "[e]ach person," rather than only to persons found guilty of a charge. Id. It was under this

16

version of the statute that Garrett first was provided with the notice of his "Rights to Destruction of Records" on July 29, 1980.

Effective July 1, 1990,[6] approximately four and one-half years after the entry of the December 23, 1985 order closing Garrett's J&DR court records, the twenty year period for retaining records of cases involving delinquent acts that constitute felonies if committed by an adult was deleted from the statute. The amendment instead substituted a provision that such "records shall be destroyed when the child has attained the age of twenty-nine." 1990 Acts ch. 258. Thus, by this amendment, the General Assembly made the destruction of J&DR court records dependent solely upon the defendant's age without regard to when the last hearing pertaining to him occurred in the J&DR court.

Code § 16.1-306 was amended again effective July 1, 1996.[7] This amendment deleted the provision for destruction of J&DR court records of juvenile defendants found to have committed delinquent acts that would constitute felonies if committed by

---

[6] The statute also was amended in 1989, however, this amendment only added a provision that the clerk should retain for a period of ten years J&DR court records that involved an offense that was required by law to be reported to the Department of Motor Vehicles. 1989 Acts ch. 183.

[7] Amendments to the statute made in 1993, 1994, and 2008 are not germane to this appeal.

an adult when the juvenile attained the age of twenty-nine and instead provided that "[i]f the juvenile was found guilty of a delinquent act which would be a felony if committed by an adult, the records shall be retained." 1996 Acts ch. 463. Garrett became twenty-nine on December 5, 1996. Thus, if the Commonwealth is correct that it is the 1996 version of Code § 16.1-306 that determines whether Garrett's J&DR court records were to be expunged and destroyed, then those records were properly retained by the Prince William County Juvenile and Domestic Relations District Court and any other agency or officer properly possessing copies of those records.

The intention of the General Assembly as expressed in Code § 16.1-306 since 1978 and the resulting statutory scheme for the expungement and destruction of the records concerning delinquency proceedings in a juvenile and domestic relations district court could not be more clear. The language of the statute plainly requires the clerks annually to destroy the "files, papers and records" of those courts concerning prior juvenile defendants who are no longer subject to the jurisdiction of those courts when the statutorily established time periods have expired and the specific statutory exceptions referenced above are not applicable. The duty imposed upon the clerks to destroy such records as well as the

18

rights afforded to the individuals are expressly conditioned upon the passage of specific time periods.

The 1985 version of Code § 16.1-306 did not grant a substantive right of constitutional dimension to an individual to have the records of a juvenile and domestic relations district court pertaining to him expunged and destroyed. Rather, the statute granted merely an inchoate right until such time as the statute then mandated that the destruction of these records would occur. Thus, we agree with the Commonwealth's contention that Garrett never had a "vested" right to have his juvenile records destroyed. This is so because the 1996 amendment to Code § 16.1-306, providing that "[i]f the juvenile was found guilty of a delinquent act which would be a felony if committed by an adult, the records shall be retained," came into effect before Garrett's twenty-ninth birthday, the date on which, under the version of the statute in effect for the first time in 1990, the right would otherwise have vested. Two of our recent decisions provide support for this conclusion.

In Morency v. Commonwealth, 274 Va. 569, 649 S.E.2d 682 (2007), we considered whether the predecessor statute to Code § 9.1-909, which permitted an individual who was required to register as a sex offender to petition to be relieved of that requirement and further directed that if such petition were

granted the Virginia State Police would remove the individual's data from its public Internet database, conveyed a vested right not to be included in the database once such petition had been granted. After Morency successfully petitioned to be relieved of the duty to register, Code § 9.1-909 was amended to eliminate the directive that the data be removed from the public database. The State Police subsequently restored Morency's data to the database. Morency then petitioned to have the data removed, contending that the circuit court's prior order provided him with a right not to be included in the database. Id. at 572-73, 649 S.E.2d at 683.

Affirming a judgment denying Morency the requested relief, we held that Code § 9.1-909 and its predecessor did not provide Morency with the right to have his data permanently removed from the database, because "[r]emoval of such information from the Internet registry was solely an action directed by statute by virtue of the receipt of the . . . order" granting his petition to be relieved from the requirement to register as a sex offender. Id. at 577, 649 S.E.2d at 686. While Morency could not be required to continue registering as a sex offender, removal of his data from the database was merely "a procedural remedy which 'may be altered, curtailed, or repealed at the will of the

legislature' and therefore did not give rise to any vested interest."  Id. at 576-77, 649 S.E.2d at 685 (quoting Commonwealth v. Shaffer, 263 Va. 428, 432-33, 559 S.E.2d 623, 626 (2002)).

Likewise, in McCabe v. Commonwealth, 274 Va. 558, 650 S.E.2d 508 (2007), we held that when the General Assembly reclassified certain crimes as "sexually violent offenses" and, thus, altered the sex offender registration requirements for persons who had previously been convicted of those offenses, the changes in the law did not affect a vested right.  Id. at 566, 659 S.E.2d at 513.  This was so because the sex offender registration requirements in effect at the time of McCabe's conviction gave rise only to a "statutorily-based expectation" of what would be required of her, not a vested right to be subject only to those requirements.  Id., 659 S.E.2d at 512.

For these reasons, we hold that the circuit court erred in ruling that Code § 16.1-306 as in effect in 1985 granted Garrett a vested right with regard to the destruction of his J&DR court records.  Accordingly, we further hold that the circuit court erred in finding that version of Code § 16.1-306

afforded Garrett the right to have his J&DR court records destroyed twenty years after December 23, 1985.[8]

We now turn to consider the Commonwealth's remaining assignment of error. Initially, we note that the circuit court's ruling to exclude Dr. Gravers' opinion was not based upon its determination that Garrett's J&DR court records should have been expunged and destroyed, but upon the court's determination that Dr. Gravers improperly relied upon the three carnal knowledge petitions which were dismissed on the Commonwealth's motion for nolle prosequi, concluding that her opinion that Garrett's mental condition included "Paraphilia, Not Otherwise Specified . . . Sexual Abuse of Child" was based on an improper foundation. As the Commonwealth's assignment of error to the court's ruling is limited to the court having excluded Dr. Gravers' opinion in its entirety, we will address this issue in order to clarify what use, if any, may be made of Dr. Gravers' opinion upon remand in light of our holding that Garrett's J&DR court records were rightly available to the Commonwealth.

The Commonwealth contends that the circuit court erred in excluding Dr. Gravers' opinion because her reliance upon the

---

[8] In light of this holding, we need not consider the Commonwealth's alternate contention regarding the availability of Garrett's juvenile court records with regard to his SVPA proceeding.

three carnal knowledge petitions was only incidental to her overall opinion and diagnosis. Thus, the Commonwealth contends that the court's ruling excluding Dr. Gravers' opinion in its entirety was overbroad.

Garrett responds that the circuit court properly determined that Dr. Gravers' reliance on the three carnal knowledge petitions was not insignificant to her final diagnosis. He contends that the court's principal concern was that Dr. Gravers had assumed that these petitions were indicative of actual criminal behavior despite the dismissal by nolle prosequi. Accordingly, Garrett maintains that the court's ruling to exclude the opinion entirely was correct, because Dr. Gravers' diagnosis of "Paraphilia, Not Otherwise Specified . . . Sexual Abuse of Child" was the result of speculation and conjecture.

We agree with the circuit court that Dr. Gravers' opinion, as proffered, was properly excluded. Code § 8.01-401.1 clearly allows an expert to express an opinion or draw an inference from inadmissible sources, such as hearsay. Nonetheless, to be admissible, an expert opinion must be based on an adequate factual foundation. Countryside Corp. v. Taylor, 263 Va. 549, 553, 561 S.E.2d 680, 682 (2002). An expert must not be permitted to express an opinion that is speculative and unreliable as a matter of law. Id.; accord

23

*Vasquez v. Mabini*, 269 Va. 155, 159-61, 606 S.E.2d 809, 811-12 (2005). Thus, we have previously held that "[w]hile Code § 37.2-906(C) permits the consideration at a SVP probable cause hearing of 'prior convictions or charges,' there is no statutory mandate that an unadjudicated charge must be taken as true for purposes of the hearing." *Commonwealth v. Jackson*, 276 Va. 184, 196, 661 S.E.2d 810, 816 (2008).

The Commonwealth's decision not to prosecute a specific charge may be made for any number of reasons, and it is well established that the granting of a motion for nolle prosequi generally does not act as an acquittal. See *Parker v. McCoy*, 212 Va. 808, 810, 188 S.E.2d 222, 224 (1972) (citing *Lindsay v. Commonwealth*, 4 Va. (2 Va. Cas.) 264, 265 (1823)). But see *Rosser v. Commonwealth*, 159 Va. 1028, 1032 167 S.E. 257, 258 (1933) (holding where the Commonwealth terminated a prosecution after jeopardy had attached, the nolle prosequi acted as an acquittal for double jeopardy purposes). Nonetheless, once the charge is dismissed, no legal significance can be attached to the fact that the charge was brought. See *Miller v. Commonwealth*, 217 Va. 929, 935, 234 S.E.2d 269, 273 (1977) ("Under Virginia procedure a nolle prosequi is a discontinuance which discharges the accused from liability on the indictment").

24

The Commonwealth asserts that in Ellison v. Commonwealth, 273 Va. 254, 639 S.E.2d 209 (2007), this Court approved the admission in an SVPA proceeding of evidence of conduct that resulted in a criminal charge, but which did not result in a conviction. Our decision in Ellison, however, is readily distinguishable from the circumstances of the present case. In Ellison, the Commonwealth was permitted to present the testimony of a woman who had alleged that Ellison had raped her. Although Ellison was acquitted in the trial that resulted from that allegation, we held that the testimony was nonetheless admissible in the SVPA proceeding because the standard of proof in such proceedings is different from that in a criminal trial. Id. at 257-58, 639 S.E.2d at 211-12.

Here, even with the additional records obtained by the Commonwealth shortly before trial, the record still supports only a finding that allegations of wrongdoing were made, but that no prosecution resulted. Unlike in Ellison, the allegations were never made the subject of sworn testimony before a trier of fact. And, unlike Ellison, here no inference can be drawn from the dismissal of the charges that there was simply a failure of the evidence to establish Garrett's guilt under the more stringent standard applicable in criminal cases because no effort was ever made to produce evidence in support of those allegations.

25

We do not challenge Dr. Gravers' assertion that mental health professionals will frequently rely upon judicial records indicating that charged conduct did not result in a final determination of guilt as nonetheless being indicative of the subject's antisocial behavior. As Code § 37.2-906(C) permits consideration of unadjudicated "charges," there undoubtedly will be instances in which additional attendant facts would permit a clinician to make a diagnosis of "Antisocial Personality Disorder" with confidence. However, with respect to a diagnosis of "Paraphilia, Not Otherwise Specified . . . Sexual Abuse of Child" in this case, the three carnal knowledge petitions standing alone were legally insufficient to permit Dr. Gravers to draw the inference that Garrett had in fact committed those offenses in the absence of any additional evidence concerning the circumstances surrounding the Commonwealth's decision to dismiss those petitions.[9]

During the probable cause hearing, Dr. Gravers testified that her consideration of Garrett's J&DR court records, and especially the three dismissed carnal knowledge petitions, was

---

[9] Our examination of the relevant documents also confirms that Dr. Gravers erred in assuming that Garrett had been committed to aftercare as a condition of the dismissal of the petitions. Rather, the records show that Garrett was "returned to aftercare" at that time because of an unrelated charge.

26

a significant factor in her opinion that Garrett meets the statutory criteria for civil commitment under the SVPA. Indeed, the only factual basis from which Dr. Gravers could have reached the diagnosis of "Paraphilia, Not Otherwise Specified . . . Sexual Abuse of Child" was from her reliance on these petitions.  There is simply no merit to the Commonwealth's assertion that Dr. Gravers' reliance upon the carnal knowledge petitions was only incidental to her overall opinion and diagnosis.

Accordingly, we hold that the circuit court did not abuse its discretion in excluding Dr. Gravers' opinion in its entirety.  We note, however, that the circuit court's ruling does not eliminate Dr. Gravers' qualification to testify as an expert in this case.  Upon remand, therefore, the Commonwealth may call Dr. Gravers as an expert witness and, to the extent that she is able to revise her opinion without relying upon the carnal knowledge petitions and limit her testimony to the analysis of Garrett's other juvenile and adult records, her interview with Garrett, and the standardized tests, the views expressed here will not serve to bar that expert testimony.

CONCLUSION

For these reasons, the orders of the circuit court will be affirmed in part and reversed in part, and we will remand

27

the case for further proceedings consistent with the views expressed in this opinion if the Commonwealth be so advised.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>

JUSTICE KINSER, with whom JUSTICE LEMONS joins, concurring.

I agree with the majority opinion but write separately to clarify reasons why I conclude that the circuit court did not abuse its discretion by excluding the expert opinion of Ilona Gravers, Psy.D., in its entirety.

The circuit court excluded Dr. Gravers' opinion because the court concluded the opinion was based on the incorrect assumption that Marvin Darryl Garrett had in fact committed the three carnal knowledge offenses charged in the juvenile petitions that were dismissed on the Commonwealth's motion for nolle prosequi. The circuit court was correct; Dr. Gravers did assume that Garrett committed the three carnal knowledge offenses, but that assumption had no factual basis.

In her written report, Dr. Gravers stated that Garrett satisfied the "criteria for [the] mental disorder of Paraphilia, Not Otherwise Specified" because Garrett "offended against a child and against a non-consenting adult." Although Dr. Gravers acknowledged that the carnal knowledge charges were nolle prossed, she nevertheless believed Garrett received

28

a sanction of aftercare placement for that alleged criminal conduct. Her belief that he received aftercare placement as a condition of the dismissal of the petitions apparently led to her conclusion that he had in fact committed a sexual offense against a child.

Dr. Gravers was wrong about the connection between the aftercare placement and the dismissal of the carnal knowledge petitions. As the majority correctly notes, the aftercare placement was the result of an unrelated charge. Dr. Gravers' opinion that Garrett suffers from "Paraphilia, Not Otherwise Specified" was therefore based on an assumption that had no basis in fact. "Expert testimony founded upon assumptions that have no basis in fact is not merely subject to refutation by cross-examination or by counter-experts; it is inadmissible." Vasquez v. Mabini, 269 Va. 155, 160, 606 S.E.2d 809, 811 (2005) (citing Virginia Financial Assoc. v. ITT Hartford Group, 266 Va. 177, 183, 585 S.E.2d 789, 792 (2003)). Thus, Dr. Gravers' opinion was inadmissible.

Dr. Gravers' incorrect conclusion that Garrett actually offended against a child also affected her diagnosis of "Antisocial Personality Disorder." Dr. Gravers wrote in her report that "[a] hallmark of Antisocial Personality Disorder is the use of acting [out] as a means of interacting with the environment and coping with distress. Roots are evident in

29

childhood." Additionally, Dr. Gravers determined that "Garrett ha[d] engaged in various forms of acting out since an early age to include criminal activity, substance abuse and sexual offending." Finally, in discussing Garrett's "sexual acting out," Dr. Gravers stated that "[h]e first sexually offended as an adolescent. While the charges were nolle prossed, he was given a sanction of aftercare placement." Again, Dr. Gravers used her incorrect premise that the aftercare placement was imposed as a result of the three dismissed carnal knowledge petitions to conclude that as a juvenile, Garrett sexually offended against a child. That conclusion contributed to Dr. Gravers' diagnosis of "Antisocial Personality Disorder." Thus, her diagnosis, like the diagnosis of "Paraphilia, Not Otherwise Specified," was based on an assumption that had no basis in fact, thereby rendering her opinion inadmissible. See Vasquez, 269 Va. at 160, 606 S.E.2d at 811.

I do not intend for my views to suggest that, in conducting an evaluation for purposes of a sexually violent predator proceeding, a mental health professional cannot rely on unadjudicated criminal conduct. Indeed, the provisions of Code § 37.2-906(C)(ii) state that, at a hearing to determine whether there is probable cause to believe a respondent is a sexually violent predator, "[t]he existence of any prior

30

convictions or charges may be shown with affidavits or documentary evidence." But, as I have explained, Dr. Gravers' incorrect assumption about Garrett's unadjudicated conduct formed the basis of her diagnoses of Garrett's mental disorders.

Finally, the Static-99, one of the standardized tests used by mental health professionals to determine the likelihood of a sex offender to re-offend, allows for unadjudicated conduct to be included in an offender's evaluation.  The coding rules for the Static-99 state:

> In some instances, the offender has been arrested for a sexual offense, questioning takes place but no formal charges are filed. If the offender is arrested for a sexual offense and no formal charges are filed, a "1" is coded under charges, and a "0" is coded under convictions.  If the offender is arrested and one or more formal charges are filed, the total number of charges is coded, even when no conviction ensues.

Both Dr. Gravers and Garrett's mental health expert used the Static-99 in this case.  On remand, mental health professionals, in my view, can properly use the three unadjudicated carnal knowledge petitions to, among other things, code the Static-99 and other such tests.

For these reasons, I respectfully concur.

31