Present:  Hassell, C.J., Koontz, Kinser, Lemons, Goodwyn, and
Millette, JJ., and Russell, S.J.

LARRY HOOD
                                        OPINION BY
v.  Record No. 092402      JUSTICE LAWRENCE L. KOONTZ, JR.
                                     November 4, 2010
COMMONWEALTH OF VIRGINIA

          FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                   Charles J. Strauss, Judge

     In a proceeding under the Civil Commitment of Sexually

Violent Predators Act ("SVPA"), Code § 37.2-900 et seq., the

Circuit Court of Pittsylvania County ruled that the respondent

prisoner, Larry Lee Hood, Jr., would not be permitted to

present expert evidence because he had refused to cooperate

with the Commonwealth's mental health expert during an

assessment examination prior to the filing of the commitment

petition.  Hood had contended that because his decision not to

cooperate had been made without the benefit of counsel, he

should have been permitted to rescind that decision once

counsel had been appointed for him and he expressed a

willingness to be examined by the Commonwealth's expert.  In

this appeal, we consider whether the circuit court's ruling

violates principles of procedural due process.

                         BACKGROUND

     Because this appeal is limited to the consideration of

the issue resulting from a discrete ruling of the circuit

court, we will recite only those facts necessary to our

resolution of that issue.[1]  Commonwealth v. Garrett, 276 Va.

590, 593, 667 S.E.2d 739, 741 (2008).  In 2001, Hood was

convicted in Pittsylvania County of rape and abduction and was

sentenced to a total of twenty years in prison with eleven

years suspended.  Hood was scheduled for release from

confinement by the Department of Corrections on February 5,

2009.

On August 11, 2008, pursuant to Code § 37.2-903, the

Director of the Department of Corrections identified Hood as

qualifying for assessment under the SVPA to determine whether

he should be confined in a mental health facility following

the completion of his active sentence.  Following receipt of

notice from the Director that Hood was subject to the

provisions of the SVPA, the Commitment Review Committee

("CRC") ordered Hood to undergo a mental health examination as

required by Code § 37.2-904.  Glenn Rex Miller, Jr., Ph.D., a

licensed clinical psychologist, was designated by the CRC to

[1] In his petition for appeal, in addition to the issue we
decide in this opinion, Hood also assigned error to the
circuit court's finding that he was a sexually violent
predator, its exclusion of certain evidence concerning the
alleged deficiencies of the in-patient treatment being
provided by the Commonwealth to sexually violent predators,
and to the court's failure to approve Hood's proposed
conditional release plan.  We refused Hood's appeal as to
these issues and, accordingly, we need not recite the evidence
relevant to the circuit court's rulings and judgment thereon.

2

conduct the examination and prepare a report evaluating whether Hood met the criteria to be civilly committed as a sexually violent predator under the SVPA.

In his written report, Dr. Miller indicated that he interviewed Hood in prison on September 12, 2008. At the outset of the interview, Dr. Miller

> advised [Hood] of the purpose of this evaluation and that all relevant information would be relayed to the [CRC]. [Hood] verbalized an understanding of the process, the limitations of his confidentiality, and the fact that a written report would be generated. Following notification of this information, [Hood] declined to participate in the evaluation. It was explained to [Hood] that a report would be generated with or without his participation and that if he chose not to participate that the [c]ourt "may bar the inmate from introducing his/her own expert psychiatric or psychological evidence."

Dr. Miller further stated that Hood then

> asked numerous questions regarding the potential consequences of hi[s] refusing the evaluation for approximately 45 minutes. It was explained to him that [Dr. Miller] was unable to administer advice in terms of whether or not participation in the assessment process was in his best interest and that he needed to make his own determination. [Hood] eventually determined that it was not in his best interest to participate in the evaluation despite the possibility that the court could bar the appointment of a defense expert.

It is undisputed that prior to deciding not to cooperate with the Code § 37.2-904 mental health examination, Hood did not have an opportunity to consult with an attorney about the consequences of his decision.

3

Because Hood declined to be interviewed further, Dr. Miller based his evaluation principally upon Hood's criminal and prison records, including Hood's performance on two risk assessment tests that had been administered by the Department of Corrections prior to Hood's referral by the Director to the CRC. Dr. Miller diagnosed Hood as having "Paraphilia NOS [and] Non-Consent and Personality Disorder NOS with Antisocial Traits."[2] Dr. Miller concluded that "[b]ased on the available records, Mr. Hood appears to have a mental disorder and personality disorder that makes it difficult for him to control his predatory behavior which makes him likely to engage in sexually violent acts."

On December 30, 2008, following receipt of Dr. Miller's report, the Commonwealth filed a petition in the Circuit Court of Pittsylvania County seeking to have Hood declared a sexually violent predator and to have him involuntarily committed to a secure mental health facility. Code § 37.2-905(A). As required by Code § 37.2-906(A), concurrent with the service of the petition, Hood was served with a formal

---

[2] The designation NOS, which stands for "not otherwise specified," is used to classify a diagnosis when a mental disorder appears to fall within a given category of disorders, such as paraphilia, but does not meet the criteria of any specific disorder within that category. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders - Text Revision § 302.9, at 576 (4th ed. 2000).

4

explanation of the SVPA's civil commitment process and his rights thereunder, including his right to be represented by counsel and to "employ experts at [his] own expense to . . . testify on [his] behalf." The Code § 37.2-906(A) notice also stated that upon a finding by the circuit court that the commitment petition was supported by probable cause, the "court may appoint experts . . . to perform examinations and participate in the trial on [Hood's] behalf," further stating that any such experts would be required to "prepare a written report detailing his/her findings and conclusions and submit the report and [its] supporting data to the [c]ourt, the Attorney General and [Hood's] counsel."

The Code § 37.2-906(A) notice also included the following explanation of the application of Code §§ 37.2-901 and -907(A):

> If a respondent refuses to cooperate with the mental health examination to determine if he/she is a sexually violent predator, the court may admit evidence of the respondent's refusal and may bar the respondent from introducing his/her own expert psychiatric or psychological evidence. Code of Virginia § 37.2-901. Furthermore, if a respondent refuses to cooperate, any expert appointed to assist the respondent shall not be permitted to testify at trial. Code of Virginia § 37.2-907(A).

On January 29, 2009, the circuit court entered an order appointing counsel to represent Hood in the commitment proceedings. On April 20, 2009, the court conducted a hearing

to determine whether there was probable cause to find that Hood was a sexually violent predator. Code § 37.2-906(C). After the court received testimony from Dr. Miller on behalf of the Commonwealth, Hood testified on his own behalf. Hood conceded that he had refused to cooperate with Dr. Miller during the Code § 37.2-904 mental health examination. After confirming that Hood did not have legal counsel at that time and had not otherwise consulted with an attorney about his decision not to cooperate with Dr. Miller, Hood's counsel asked whether, after having discussed the matter with him following his appointment after the commitment petition had been filed, Hood was now willing to cooperate and be examined by Dr. Miller if it were determined that there was probable cause to proceed to a trial. Hood responded, "Yeah, I will, I'll cooperate. I don't have anything to hide."

In a colloquy with the circuit court at the conclusion of the probable cause hearing, Hood's counsel contended that it was "against [Hood's] due process rights to be forced to make the decision of whether to cooperate with a doctor months before he has counsel." Hood's counsel noted that by refusing to cooperate, Code §§ 37.2-901 and -907(A) limited Hood's right to present expert testimony in the commitment proceedings, even though such evidence was "very dispositive and very crucial" to his ability to put on a defense. The

6

Commonwealth responded that it had met its burden of showing that there was probable cause to believe that Hood was a sexually violent predator, and that the issues raised concerning Hood's right to present expert evidence, and whether his due process rights had been violated "are for the trial."

The circuit court announced its ruling that there was probable cause to find that Hood was a sexually violent predator. The Commonwealth then indicated that although it was prepared for trial, it would not oppose a continuance for setting a trial date if Hood "want[ed] an expert to assist in this matter." The court queried whether a defense expert would be allowed to testify at the trial, and the Commonwealth responded that its position was that the expert would not be allowed to testify, but "they are allowed to have one." The court ruled, based on its reading of Code § 37.2-907(A), that it did not have any discretion to permit an appointed defense expert to testify because Hood had refused to cooperate at the time of the Code § 37.2-904 mental health examination, though the expert "could certainly assist them . . . in ways at trial." After asking the court to clarify its ruling that Hood "cannot have the expert testify," the court confirmed that it had so ruled. Hood's counsel noted his objection to that ruling.

On June 4, 2009, Hood filed an omnibus pre-trial motion including a request for the appointment of Dr. Evan S. Nelson as an expert to assist Hood.  The motion further sought "a clarification by the [circuit c]ourt . . . so that Dr. Nelson will know what role he is to play, and whether he needs to prepare and/or submit a report."  On June 10, 2009, the court entered an order appointing Dr. Nelson "as an expert to advise" Hood, noting that "[o]ver the objection of [Hood], Dr. Nelson shall not be allowed to testify in this case."[3]

At a commitment trial held July 15, 2009, Hood renewed his objection to his not being permitted to present expert testimony or present a written report from Dr. Nelson.  Hood contended that general principles of procedural due process required either that Hood should have been afforded the opportunity to consult with an attorney before deciding whether to cooperate with the Code § 37.2-904 mental health examination or that he should have been allowed to rescind his decision not to cooperate, as he had attempted to do, once he had been appointed counsel and had consulted with him on the

_____

[3] Although the circuit court did not expressly address the admissibility of a report from Dr. Nelson in this order as Hood had requested in his motion, it is undisputed that Hood was not permitted to introduce any expert evidence, by testimony or exhibit, at his commitment trial and dispositional hearing.

8

matter. Hood contended that because he had offered to rescind his refusal to cooperate, the court could permit him to present expert evidence. Indicating that it had "already ruled on that," the circuit court stated that the "motion to preserve that [is] on the record."

At the trial, the Commonwealth presented evidence from Dr. Miller and from the sheriff's deputy who investigated the rape and abduction for which Hood had been convicted. Hood was not permitted to put on any expert evidence, and did not testify or call any lay witnesses. At the conclusion of the trial, the court entered an order finding that Hood was a sexually violent predator.

On September 1, 2009, the circuit court conducted a dispositional hearing to determine whether there was any suitable alternative treatment plan to having Hood committed as an in-patient in a secure mental health facility. The Commonwealth presented evidence from Dr. Miller and Carolyn Harrington, a licensed clinical social worker employed by the Commonwealth as a sexually violent predator program specialist. Hood presented testimony from his sister, Debbie Howard, concerning familial support available if Hood were to be conditionally released under a proposed community-based treatment plan. However, Hood was not permitted to present any expert evidence concerning the suitability of that plan.

At the conclusion of the hearing, the court entered an order finding that Hood's proposed conditional release plan was unsuitable and there was "no less restrictive alternative to involuntary secure inpatient treatment and hospitalization." Accordingly, the court ordered Hood to be committed to the custody of the Department of Behavioral Health and Development Services to be confined in a secure facility.

DISCUSSION

As indicated at the outset, this appeal is limited to the discrete issue of whether Hood was denied procedural due process when the circuit court barred him from presenting testimony or a report from his own expert during the commitment proceedings. As framed by Hood, that issue does not challenge the facial constitutionality of the relevant provisions of the SVPA, nor does he challenge the statutory framework of the SVPA that provides for the appointment of counsel to represent a prisoner only after a petition seeking his involuntary commitment has been filed. Rather, the issue presented is limited to whether the restrictions imposed by Code §§ 37.2-901 and -907(A) upon the prisoner's right to present expert evidence offend procedural due process as they were applied to Hood in this case.

Specifically, this issue involves two separate inquiries. First, we must decide whether due process requires that a

10

prisoner who, like Hood, did not have an opportunity to consult with an attorney when he initially refused to cooperate with the Code § 37.2-904 mental health examination, should be permitted to revisit that determination once he has been assigned counsel. Second, we must determine whether a trial court may permit such a prisoner to present expert evidence at his commitment trial and dispositional hearing if he is subsequently willing to cooperate with the Commonwealth's expert.

Due process is the embodiment of the concept that the government is required to do, or refrain from doing, certain things if it is to exercise the authority that it derives from the consent of the governed justly and without prejudice or excess. See Carey v. Piphus, 435 U.S. 247, 259 (1978) (due process is "meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property"). Determining what is required of the government to satisfy due process depends upon the particular situation at issue and the interests involved. As the United States Supreme Court has observed, due process "is not a technical conception with a fixed content unrelated to time, place and circumstances," Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961), but involves "intensely practical matters." Goss v. Lopez, 419 U.S. 565, 578 (1975).

11

As pertinent to the present case, the United States Supreme Court has held that "for the ordinary citizen, commitment to a mental hospital produces a massive curtailment of liberty, and in consequence requires due process protection." Vitek v. Jones, 445 U.S. 480, 491-92 (1980) (internal quotation marks and citations omitted). Similarly, with specific application to the SVPA, we have held that "involuntary civil commitment is a significant deprivation of liberty to which federal and state procedural due process protections apply." Jenkins v. Director, Va. Ctr. for Behav. Rehab., 271 Va. 4, 15, 624 S.E.2d 453, 460 (2006); accord Townes v. Commonwealth, 269 Va. 234, 240, 609 S.E.2d 1, 4 (2005) ("Civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.") (internal quotation marks omitted). However, "[o]nce it is determined that due process applies, the question remains what process is due." Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

In Jenkins, citing Vitek, we recognized that there were "certain minimal standards" to which the Commonwealth was required to adhere in order to satisfy the "due process guarantee[d] to a respondent in an involuntary civil commitment proceeding." Jenkins, 271 Va. at 15, 624 S.E.2d at 460. Chief among these minimal standards is the right to a

12

"hearing at which evidence is presented and the respondent is provided a chance to be heard and to present documentary evidence as well as witnesses." Id. (emphasis added). We further held "the due process protections embodied in the federal and Virginia Constitutions mandate that the subject of the involuntary civil commitment process has the right to counsel at all significant stages of the judicial proceedings." Id. at 16, 624 S.E.2d at 460.

Hood contends that he was deprived of his due process rights when he was required to make the decision whether to cooperate with Dr. Miller in the Code § 37.2-904 mental health examination without first being afforded the opportunity to consult with an attorney. This is so, Hood maintains, because "[t]he significance of the decision . . . whether to cooperate with the government psychiatrist or psychologist is crucial under Virginia's SVP Act, since it affects the entire trial as well as the dispositional proceeding on whether outpatient treatment is feasible." Hood notes that the SVPA does not require that the prisoner be advised of its provisions, including the consequences of his failure to cooperate with the Commonwealth's expert, until the petition to seek the prisoner's commitment is filed, which necessarily cannot occur until after the Code § 37.2-904 mental health examination. He likewise notes that it is only at this point that the

13

statutory right to appointment of counsel under the SVPA accrues. Hood thus contends that "an extremely important right – the right to present testimony favorable to one's side of the case – is being made dependent upon whether the [prisoner] cooperates with the government psychiatrist or psychologist, and . . . he <u>must</u> make the decision to cooperate or not before having counsel appointed."[4]

The Commonwealth responds that Hood did not have a right to the assistance of counsel at the time of the Code § 37.2-904 mental health examination. The Commonwealth maintains this is so because the SVPA provides that the prisoner has a right "[t]o be represented by counsel" only "[i]n hearings and trials held pursuant to this chapter." Code § 37.2-901. Likewise, the SVPA provides for the appointment of counsel to an unrepresented prisoner only after a petition seeking commitment of the prisoner has been filed, Code § 37.2-906(B),

---

[4] Hood contends that Virginia is the only jurisdiction in the United States that has a statutory process for civilly committing sexual predators which pre-conditions the right of a person subject to that process to present evidence in the commitment proceeding on a requirement that the person assist the government in that process before being afforded the assistance of counsel. In a footnote within his brief, Hood provided an exhaustive summary of the federal and state statutory processes equivalent to the SVPA in support of this proposition. The Commonwealth does not dispute that this aspect of Virginia's SVPA is unique within this area of the law.

14

and the first "hearing" at which the prisoner is required to have counsel is the probable cause hearing required by Code § 37.2-906(C).

Hood recognizes the SVPA does not provide for the appointment of counsel prior to the filing of a petition seeking commitment. Indeed, Hood concedes on brief that until the petition is filed, there is no court that would have jurisdiction to make such appointment, and no practical mechanism for having a court do so. Hood nonetheless contends that because a prisoner is required to make a decision that will affect his right to present expert evidence at his commitment trial and dispositional hearing at a point in time before the prisoner is afforded the opportunity to consult with an attorney, procedural due process requires that the prisoner should be permitted to revisit that decision once he has counsel, and if he is then willing to cooperate with the Commonwealth's expert, he should then be permitted to present expert evidence on his own behalf.

Responding to Hood's due process arguments, the Commonwealth asserts that the procedural due process protections of the United States and Virginia Constitutions that afford a criminal defendant the right to assistance of counsel before a formal prosecution has commenced do not apply to a prisoner during a pre-petition investigation under the

15

SVPA, since a commitment under the SVPA is a civil proceeding. Noting that in his assignment of error Hood specifically asserts that requiring him to choose whether to cooperate with the Code § 37.2-904 mental health examination without the benefit of counsel was "in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States, the Right to Counsel provision of the Sixth Amendment of the Constitution of the United States, and the Law of the Land provision in Article I § 8 of the Constitution of Virginia," the Commonwealth contends that the due process guarantees of these constitutional provisions are inapplicable to Hood because they are limited in their application to criminal prosecutions. See Jenkins, 271 Va. at 15, 624 S.E.2d at 460 ("Even though involuntary civil commitment is a significant deprivation of liberty to which federal and state procedural due process protections apply, persons subject to these commitment proceedings do not enjoy the same rights attendant to a criminal proceeding.")

While we agree with the Commonwealth that there is no statutory or due process requirement for a prisoner to be provided with the assistance of counsel at the time of the Code § 37.2-904 mental health examination, we conclude that the Commonwealth's response on this point fails to address the question whether the statutory provisions that bar a prisoner

16

from presenting expert evidence if he chooses not to cooperate with that examination violate procedural due process where, having subsequently consulted with counsel, the prisoner demonstrates a willingness to rescind that decision prior to the trial on a commitment petition.  Thus, while we agree with the Commonwealth that Hood's claim cannot fall within the due process protections of the Sixth Amendment and Article I, Section 8 of the Virginia Constitution, which are specific to criminal prosecutions, we conclude that Hood's argument does fall within the procedural due process guarantee of the Fifth Amendment that no person "be deprived of life, liberty, or property, without due process of law," which unquestionably applies in civil proceedings under the SVPA.  Warrington v. Commonwealth, 280 Va. 365,370, 699 S.E.2d 233, 235 (2010); Jenkins, 271 Va. at 15, 624 S.E.2d at 460; Townes, 269 Va. at 240, 609 S.E.2d at 4.

In short, the issue raised by Hood at trial and in this appeal is not whether he could or should have been afforded the assistance of counsel at the time of the Code § 37.2-904 mental health examination.  Rather, the issue is whether the penalty imposed for his failure to cooperate in that examination violates procedural due process because he was not afforded the opportunity to revisit that decision once counsel had been appointed.  Stated another way, the issue is whether

17

the statutory provisions that permit the Commonwealth to limit the right of a prisoner subject to the SVPA to present evidence in his defense offend procedural due process because they are based upon conduct of the prisoner that occurred prior to the initiation of formal commitment proceedings under Code § 37.2-905 at a time when he did not have, and was not entitled to, the assistance of counsel.  For the reasons that follow, we conclude that Code §§ 37.2-901 and -907(A) must be construed in a manner consistent with due process.  In applying that construction to the facts of this case, we further conclude that the circuit court erred in ruling that Hood could not rescind his decision not to cooperate and, thus, that the court was without discretion to permit him to present expert evidence in the commitment trial and dispositional hearing.

The circuit court's ruling that Hood would not be permitted to present expert testimony or a report from Dr. Nelson was based upon its construction of Code § 37.2-907(A).  However, as indicated above, Code § 37.2-901 also addresses the Commonwealth's ability to limit a prisoner's right to present expert evidence in SVPA proceedings.  This Court reviews issues of statutory construction de novo.  Farrakhan v. Commonwealth, 273 Va. 177, 180, 639 S.E.2d 227, 229 (2007).  Moreover, "although civil in nature, a statutory scheme such

18

as the SVPA that permits an involuntary commitment process to be initiated by the Commonwealth is subject to the rule of lenity normally applicable to criminal statutes and must therefore be strictly construed." Townes, 269 Va. at 240, 609 S.E.2d at 4.

In relevant part, Code § 37.2-901 provides:

> In hearings and trials held pursuant to this chapter, respondents shall have the . . . . right[] . . . . [t]o be represented by counsel . . . . [and t]o present evidence and to cross-examine witnesses . . . . In the event the respondent refuses to cooperate with the mental health examination required under § 37.2-904, the court may admit evidence of such refusal and may bar the respondent from introducing his own expert psychiatric or psychological evidence.

(Emphasis added.)

This statute comports with the minimal standards of due process the Commonwealth is required to follow in SVPA proceedings as set forth in Jenkins. Moreover, we find that the discretionary power given to the court to limit the prisoner's right to present expert evidence if he "refuses" to cooperate with the Code § 37.2-904 mental health examination is a reasonable limitation on the prisoner's right to present evidence in such proceedings. This discretionary power permits the court to weigh the particular circumstances of the specific case, such as whether the decision not to cooperate was made with the assistance of counsel, before determining

19

whether to limit the prisoner's right to introduce expert evidence at trial. Moreover, the use of the term "refuses," in the present tense, implies that the court will be able to take into consideration the position of the prisoner at the time of the proceeding. That is, the court can inquire whether the prisoner still "refuses" to cooperate even once the possible consequence of that action has been made clear. In such circumstances, if the prisoner remains adamant in his refusal to cooperate with the Commonwealth's expert, due process certainly would not require the court to afford the prisoner an undue advantage by permitting him to present evidence based upon a personal interview and examination by his expert, while he is simultaneously denying the Commonwealth's expert the ability to form his diagnosis in the same way. Cf. Code § 19.2-168.1(B) (permitting a court to bar defendant from presenting expert testimony in support of an insanity defense for failing to cooperate with the Commonwealth's expert); Grattan v. Commonwealth, 278 Va. 602, 620-21, 685 S.E.2d 634, 644-45 (2009) (finding no abuse of discretion in trial court's application of Code § 19.2-168.1(B)).

In contrast, Code § 37.2-907(A), the statute relied upon by the circuit court to find that Hood's initial refusal to cooperate with the Code § 37.2-904 mental health examination

20

created an absolute bar to his being able to present expert evidence in the commitment trial and dispositional hearing, appears to place greater restrictions on the court's authority in such situations. After directing the court to appoint necessary experts to assist a prisoner if he "requests expert assistance and has not employed an expert at his own expense," in relevant part the statute provides that "if the respondent <u>refused</u> to cooperate pursuant to § 37.2-901 any expert appointed to assist the respondent <u>shall not be permitted to testify at trial nor shall any report of any such expert be admissible</u>."[5] (Emphasis added.)

While the use of the term "shall" in a statute is generally construed as directory rather than mandatory, we may not construe it as such if "the statute manifests a contrary intent." <u>Jamborsky v. Baskins</u>, 247 Va. 506, 511, 442 S.E.2d 636, 638 (1994). On its face, the clause "shall not be permitted to testify at trial nor shall any report of any such expert be admissible" appears to manifest a mandatory intent that evidence from the prisoner's appointed experts must be

_____

[5] By its express terms, this statute is limited in its application to denying the prisoner the right to present evidence from "appointed" experts. Hood has not asserted an equal protection argument in challenging the application of the statute to him. Accordingly, we express no opinion on this issue.

21

excluded if he "refused to cooperate pursuant to § 37.2-901."

(Emphasis added.)  This construction, however, would appear to

create a conflict between Code § 37.2-907(A) and Code § 37.2-

901, which we have found gives the court discretion in such

matters, rather than mandating exclusion of the prisoner's

expert evidence.

"It is a well-settled principle of law that where two

statutes are in apparent conflict they should be so construed,

if reasonably possible, so as to allow both to stand and to

give force and effect to each.  It is the object of the courts

to construe all statutes in pari materia in such manner as to

reconcile, if possible, any discordant feature which may

exist, and make the body of the laws harmonious and just in

their operation."  Waller v. Commonwealth, 278 Va. 731, 737,

685 S.E.2d 48, 51 (2009) (internal quotation marks and

citations omitted).  This principle is particularly applicable

under the circumstances of the present case, since two

statutes within the same legislative act are involved and both

statutes address the same subject matter, namely a prisoner's

right to present expert evidence.  Evans v. Evans, 280 Va. 76,

83 n.2, 84-85, 695 S.E.2d 173, 176 n.2, 177 (2010).  Moreover,

because Code § 37.2-907(A) does not reference Code § 37.2-904

directly, but instead defines the determination of whether the

prisoner "refused to cooperate" with the Commonwealth's expert

22

"pursuant to § 37.2-901," we cannot definitively construe the relevant language of the latter statute without reference to the former.

Given our holding that Code § 37.2-901 comports with the due process requirements for an involuntary commitment proceeding under the SVPA because the limitation on a prisoner's right to present expert evidence is discretionary, it follows that the similar limitation of Code § 37.2-907(A) must likewise have a discretionary, rather than mandatory, application. If this were not the case, a mandatory prohibition of Code § 37.2-907(A) would render the discretionary authority granted to the court by Code § 37.2-901 ineffective in those cases where the defendant has not privately retained his own expert.

When Code §§ 37.2-901 and -907(A) are harmoniously construed in this manner, it becomes plain that the SVPA does not offend those minimal standards of due process required by Jenkins because an uncounseled decision by a prisoner to refuse to cooperate with the Commonwealth's expert during the Code § 37.2-904 mental health examination will not serve as an absolute bar to his right to present expert evidence during his commitment trial and dispositional hearing. Rather, in cases where the Commonwealth seeks to prohibit a prisoner from presenting such evidence, the court will have the discretion

23

to allow or bar such evidence based upon its inquiry into the circumstances under which the prisoner made his decision at the time of the examination and whether the prisoner remains steadfast in his refusal to cooperate.

The record in this case adequately demonstrates that at the time of the Code § 37.2-904 mental health examination Hood wished to be better informed of the requirements and consequences of his decision whether to cooperate with the Commonwealth's expert. It is equally clear that after he was afforded the assistance of counsel, Hood offered to rescind his refusal to cooperate at the first hearing in which he appeared before the circuit court after the commitment petition had been filed. There is no indication in the record that this offer was not genuine or that it was made for any strategic purpose of delay or to gain some advantage over the Commonwealth. Moreover, given the Commonwealth's willingness to allow for a continuance following that hearing to permit Hood to be examined by his own expert, there would have been no undue delay in the proceedings if the Commonwealth had also desired to have Dr. Miller examine Hood and amend his report and diagnosis if necessary.

Accordingly, we hold that the circuit court erred in ruling that Code § 37.2-907(A) mandated that Hood was prohibited from presenting any expert evidence at his

commitment trial and dispositional hearing because of his refusal to cooperate with Dr. Miller during the prior Code § 37.2-904 mental health examination.  We further hold that the court erred in not permitting Hood to rescind his refusal to cooperate and not permitting him to present testimony and a report from Dr. Nelson at the commitment trial and dispositional hearing.

## CONCLUSION

Because Hood was improperly denied the right to call Dr. Nelson and present other expert evidence at his commitment trial, a right afforded both by the SVPA and by the minimal standards of procedural due process that we have held must be applied in such cases, the determination that he is a sexually violent predator is necessarily called into question. Likewise, this error deprived the circuit court of important evidence during the dispositional hearing that might have permitted it to determine that Hood's conditional release plan was a viable, less restrictive alternative to full commitment. Accordingly, the judgment of the circuit court will be reversed, and the case remanded for a new trial to determine whether Hood is a sexually violent predator, and if so, the court shall also conduct a new dispositional hearing to determine whether there is any less-restrictive alternative to

25

involuntary inpatient treatment and hospitalization if the Commonwealth be so advised.[6]

Reversed and remanded.

---

[6] In briefing this appeal, Hood stated in his prayer for relief that in any retrial he should be allowed to present expert evidence "if [he] chooses to cooperate with the state's expert." (Emphasis added.) Of course, with the passage of time, Hood may have reconsidered his offer to cooperate with the Commonwealth's expert made at the probable cause hearing. If, however, in any new trial it is established that Hood has declined to cooperate with the Commonwealth's expert, then the Commonwealth may seek to have the circuit court rule that Hood will be prohibited from presenting expert evidence and, in such circumstance, the court would be justified in entering summary judgment based upon the prior record.