PRESENT:  All the Justices

FRANK PAUL FERRARA

v.  Record No. 200117

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE STEPHEN R. McCULLOUGH
February 25, 2021

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Jeffrey W. Parker, Judge

Frank Paul Ferrara repeatedly refused to cooperate with the expert who was tasked with evaluating him for purposes of determining whether he was a sexually violent predator for purposes of Virginia's Sexually Violent Predators Act ("SVPA"), Code §§ 37.2-900 through -921.  At his commitment hearing, Ferrara sought to introduce as substantive evidence the results of two prior mental health evaluations, conducted in past years, by a previous expert for the Commonwealth.  The circuit court concluded that, due to Ferrara's failure to cooperate with the evaluation required in the present proceedings, Code § 37.2-906 foreclosed the introduction of this evidence.  On appeal, Ferrara argues that the circuit court misconstrued this statute.  Although we agree with Ferrara that Code § 37.2-906 applies to probable cause hearings rather than civil commitment hearings, we nevertheless affirm the judgment of the circuit court on the basis of harmless error.

BACKGROUND

Ferrara was convicted of four counts of forcible sodomy of his daughters in 1997.  He was sentenced to 24 years in prison with 9 years suspended and 5 years of supervised probation.  Before he was released, in 2010, Dr. Mark Hastings evaluated Ferrara to determine whether he qualified as a sexually violent predator.  Dr. Hastings determined that Ferrara did not qualify.  Ferrara was released on supervised probation in 2011.

In 2012, Ferrara's probation was revoked because of a petit larceny conviction. The court resuspended all but nine months of Ferrara's sentence. He was then released in 2013. In 2013 and 2014, Ferrara was convicted of two counts of felony indecent exposure and his probation was again revoked. He was sentenced to a total of three years and 15 months on the two convictions.

In 2016, before Ferrara's scheduled release, Dr. Hastings evaluated him a second time at the behest of the Commonwealth for possible civil commitment. Dr. Hastings again determined that Ferrara did not qualify as a sexually violent predator. Several months later, in 2017, the court revoked Ferrara's probation because he had attended Jehovah's Witness meetings where children were present, despite warnings from his probation officer not to do so without an approved chaperone. Ferrara was sentenced to an active term of one year and three months.

In advance of Ferrara's scheduled release, in 2018, he was evaluated a third time for civil commitment. This time he was evaluated by a different expert, Dr. Dennis Carpenter. Ferrara refused to participate in Dr. Carpenter's evaluation -- even after being advised that his refusal to cooperate would result in him not being able to put on his own expert at the civil commitment hearing.

Dr. Carpenter concluded that Ferrara was a sexually violent predator eligible for civil commitment, and he issued a report to that effect. Specifically, upon review of Ferrara's record and history, Dr. Carpenter diagnosed Ferrara with pedophilic disorder, nonexclusive type, sexually attracted to females; exhibitionistic disorder sexually aroused by exposing genitals to physically mature females; and other specified personality disorder, antisocial personality traits. Dr. Carpenter concluded that based on Ferrara's conviction of forcible sodomy he had committed a sexually violent offense, and that the above-mentioned diagnoses constituted a mental

2

abnormality that makes it difficult for Ferrara to control his predatory behavior and makes him likely to engage in sexually violent acts in the future. Dr. Carpenter's evaluation addressed the fact that his determination differed from the previous two evaluations of Dr. Hastings. Dr. Carpenter's evaluation notes that Dr. Hastings concluded that Ferrara was not a sexually violent predator because his pedophilic actions did not take place over a period of six months or more. However, Dr. Carpenter did "not agree with Dr. Hastings'[s] conclusions," and he noted that the six-month guideline articulated in the DSM-5 upon which Dr. Hastings based his conclusion is merely a guideline and is not mandatory. Dr. Carpenter stated that the pedophilia diagnosis "may be made if there is clinical evidence of sustained persistence of the sexual attraction to children even if the 6-month duration cannot be precisely determined."

Before Ferrara's probable cause hearing, the court appointed counsel for him. After this appointment, Ferrara persisted in refusing to cooperate with Dr. Carpenter. Relying on Dr. Carpenter's report and other evidence, the court found that probable cause existed.

Ferrara then moved pretrial to introduce the 2010 and 2016 evaluations of Dr. Hastings and to allow Dr. Hastings to testify at trial. In response, the circuit court held that

> 1) Respondent shall not elicit testimony during its cross-examination of the Commonwealth's expert, Dr. Carpenter, or make reference to in argument or opening statement, hearsay facts or opinion contained in prior evaluations conducted by Dr. Mark Hastings without first laying the requisite foundation; and 2) Respondent, Respondent's counsel and Respondent's witnesses shall not offer evidence or argument that Respondent previously served a period of incarceration in the [VDOC] for a sexually violent offense but prior to his release from VDOC the Commonwealth did not file a petition to civilly commit Respondent as a sexually violent predator without first approaching the Bench, outside the presence of the jury, and having the Court rule on the matter's admissibility.

The transcript indicates that the circuit court relied on Code § 37.2-906(D) in excluding Dr. Hastings' reports and preventing Dr. Hastings from testifying.

3

The civil commitment proceeding was tried before a jury. At the trial, the circuit court did not allow Ferrara to call Dr. Hastings as a witness nor did it allow him to introduce either of Dr. Hastings' reports. However, the court did permit Ferrara to question Dr. Carpenter on whether he relied on Dr. Hastings' report or conclusions. Dr. Carpenter testified that he did not rely on Dr. Hastings' conclusion, as he disagreed with it. Specifically, Dr. Carpenter testified that he did not "think [Dr. Hastings] considered the factual information in the way that I would consider it and the seriousness of the offenses and the pervasiveness of his aberrant sexual kinds of behaviors including indecent exposure, and the nature of his offenses." Dr. Carpenter also testified at length regarding his evaluation and specifically addressed the DSM-5's six-month guideline for a pedophilia diagnosis. Dr. Carpenter further discussed how his application of the Static 99, Static 99R, and Static 2002R actuarial assessments placed Ferrara in the category of high risk of sexually reoffending. Ultimately, the jury found that Ferrara was a sexually violent predator, and the court ordered Ferrara to be civilly committed as a sexually violent predator. Ferrara appeals.

ANALYSIS

I.     CODE § 37.2-907(A) GOVERNS COMMITMENT TRIAL TESTIMONY WHILE CODE § 37.2-906(D) APPLIES IN PROBABLE CAUSE HEARINGS.

The parties dispute the extent to which Code § 37.2-906(D) applies at sexually violent predator commitment hearings. Ferrara maintains that this statute applies in probable cause hearings only, and that Code § 37.2-907(A) is the provision that governs the commitment hearing itself. The Commonwealth takes the view that Code § 37.2-906(D) can apply in both the probable cause hearing and in the commitment hearing. The distinction matters because Code § 37.2-906(D) broadly bars a non-cooperating respondent from presenting *any* expert psychiatric and psychological evidence, whereas Code § 37.2-907(A) more narrowly bars a non-cooperating

4

respondent from presenting evidence from a *court appointed* expert, i.e., it does not by its terms bar a non-cooperating respondent from introducing evidence from a retained expert or an expert for the Commonwealth. Our review of the text and structure of these statutes leads us to agree with Ferrara.

"Statutory construction is a question of law which we review de novo." *Parker v. Warren*, 273 Va. 20, 23 (2007). First, applying the bar of Code § 37.2-906(D) to civil commitment hearings would render the language of Code § 37.2-907(A) entirely superfluous. We disfavor a construction of a statute that renders any part of the statute useless or superfluous. *See Loch Levan Land Ltd. P'ship v. Board of Supervisors*, 297 Va. 674, 685 (2019) ("We ordinarily resist a construction of a statute that would render part of a statute superfluous.") (quoting *Davis v. MKR Dev., LLC*, 295 Va. 488, 494 (2018)); *see also Owens v. DRS Auto. Fantomworks, Inc.*, 288 Va. 489, 497 (2014).

Second, the sequential structure of the Code provisions as well the text of Code § 37.2-906(D) indicate that Code § 37.2-906(D) was intended to apply only to probable cause hearings. As is relevant here, the Code first contemplates that a prisoner being considered for civil commitment will be evaluated by an expert. Code § 37.2-904. That evaluation is to include, among other things, a personal interview by a licensed psychiatrist or a licensed clinical psychologist. Code § 37.2-904(B). After this evaluation, the Commitment Review Committee makes a recommendation to the Office of the Attorney General concerning what course of action to take for a particular person. Code § 37.2-904(C). If the Office of the Attorney General determines that a particular individual ought to be civilly committed, it will file a petition for civil commitment. Code § 37.2-905(A). The next step is a probable cause hearing, where the

5

court is tasked with determining "whether probable cause exists to believe that [the respondent] is a sexually violent predator." Code § 37.2-906(E).

The statute that governs probable cause hearings, Code § 37.2-906(D) provides in relevant part that

> [i]n the event that a respondent refuses to cooperate with the mental health examination required by § 37.2-904 or fails or refuses to cooperate with the mental health examination following rescission of his refusal pursuant to this subsection, the court shall admit evidence of such failure or refusal and shall bar the respondent from introducing his own expert psychiatric and psychological evidence.

If the court finds probable cause, Code § 37.2-907(A) provides that when a respondent has requested "expert assistance and has not employed an expert at his own expense, the judge shall appoint such experts as he deems necessary." Furthermore, if a court finds that probable cause exists, the case proceeds to a commitment trial. Code § 37.2-908.

This sequential organization of the statutes indicates a legislative intent that Code § 37.2-906 should apply in probable cause hearings and Code § 37.2-907(A) should apply to commitment hearings. In addition, the text of Code § 37.2-906 as a whole is generally directed at probable cause determinations, not commitment hearings. In other words, the Code provides one statute that primarily regulates probable cause hearings and another to regulate commitment hearings.

For these reasons, we conclude that the bar on expert evidence found in Code § 37.2-906(D) applies in probable cause hearings, not commitment hearings. Therefore, the trial court in the present proceeding erred in concluding that Code § 37.2-906(D) barred the respondent from introducing evidence at his commitment hearing. Furthermore, Code § 37.2-907(A) does not apply to exclude Dr. Hastings' testimony and reports because it bars

6

testimony from an expert "*appointed to assist the respondent*" when the respondent has failed to cooperate with the Commonwealth's expert. Code § 37.2-907(A). Dr. Hastings was an expert for the Commonwealth who was previously tasked with evaluating Ferrara. He was not an expert appointed for the respondent.

Our construction of Code § 37.2-906(D) and Code § 37.2-907(A), however, does not end the inquiry. Although no rule or statute governs this precise situation, the question remains concerning the authority of the court to address a respondent's refusal to cooperate with the Commonwealth's expert under Code § 37.2-904.

II.    A TRIAL COURT RETAINS THE AUTHORITY TO ADDRESS GAMESMANSHIP IN THIS CONTEXT NO LESS THAN IN OTHERS.

It is settled law that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962);[1] *see, e.g.*, *Yarbrough v. Commonwealth*, 258 Va. 347, 361 (1999) (trial court has the inherent authority to administer cases on its docket); *Carter v. Commonwealth*, 96 Va. 791, 807-08 (1899) (the power of contempt is inherent in the courts but subject to reasonable regulation by the legislature). *But see Lewis v. Commonwealth*, 295 Va. 454, 465 (2018) (a Virginia trial court "has no inherent authority to depart from the range of punishment legislatively prescribed") (quoting *Hernandez v. Commonwealth*, 281 Va. 222, 225 (2011)); *McNally v. Rey*, 275 Va. 475,

---

[1] Of course, a court's inherent authority can be codified in a statute or rule, or it can, within constitutional bounds, be cabined or augmented by a statute or rule.

7

480 (2008) (trial court "does not have inherent authority to impose as a sanction an award of attorney's fees and costs").  Even in the absence of a governing statute or rule of court, as an adjunct of a court's authority to oversee the judicial process and litigation, a court possesses the inherent power to impose a sanction when a party refuses to abide by an obligation to provide evidence.[2]  *See Walsh v. Bennett*, 260 Va. 171, 175 (2000) as support for the broad discretion that a court enjoys in addressing failure to comply with a discovery order; *Allied Concrete Co. v. Lester*, 285 Va. 295, 307 (2013) (discussing a trial court's authority to respond to spoliation and noting that "[a] trial court generally exercises 'broad discretion' in determining the appropriate sanction for failure to comply with an order relating to discovery" but not citing to any rule of court for that point).  That sanction may include the exclusion of evidence.

Code § 37.2-904 obligates the respondent in a SVPA commitment proceeding to submit to an examination.  The respondent repeatedly failed to comply with that obligation.  As when a respondent refuses to comply with discovery, and deprives the other party of evidence, when a respondent in a sexually violent predator commitment proceeding refuses to cooperate with the Commonwealth's expert and no valid reason exists to excuse or justify this lack of cooperation, a court possesses the inherent authority to address this failure to cooperate.  That authority includes the exclusion of evidence of the same type as that offered by the Commonwealth.

---

[2] The courts of the United States possess similar discretion.  *See, e.g.*, *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993) (courts possess the inherent power to sanction discovery abuses); *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) ("The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation.").

III.    EXCLUDING EVIDENCE ON THE BASIS OF GAMESMANSHIP DOES NOT OFFEND DUE
        PROCESS.

Ferrara maintains that excluding the reports of Dr. Hastings offends due process and

deprives him of a fair trial.  A clear line of authority says otherwise.  "[C]ivil commitment for

any purpose constitutes a significant deprivation of liberty that requires due process protection."

*Addington v. Texas*, 441 U.S. 418, 425 (1979).  Although the Due Process Clauses of the

Virginia and United States Constitutions afford a litigant the right to present evidence in his

favor, Va. Const. art. I, § 11; U.S. Const. amend V, due process is not offended when the litigant

forfeits the right through purposeful non-cooperation.  "A defendant's right to present relevant

evidence is not unlimited, but rather is subject to reasonable restrictions."  *United States v.*

*Scheffer*, 523 U.S. 303, 308 (1998).[3]

For example, the United States Supreme Court has rejected a due process challenge to a

state court's exclusion of alibi evidence based on the defendant's refusal to comply with alibi

notice provisions.  *Williams v. Florida*, 399 U.S. 78, 81-82 (1970).  In *Williams*, the Court

observed that "[t]he adversary system of trial is hardly an end in itself; it is not yet a poker game

in which players enjoy an absolute right always to conceal their cards until played."  *Id.* at 82.

The Court concluded that due process accommodated the State's alibi notice rule, "which is

---

[3] The Sixth Amendment protects a defendant's right of compulsory process in a criminal case.  U.S. Const. amend VI.  A sexually violent predator proceeding is civil.  *United States v. Baker*, 45 F.3d 837, 842-43 (4th Cir. 1995).  Therefore, the Sixth Amendment does not apply. Instead, the Due Process Clause of the Fifth Amendment is the operative clause.  *See Jenkins v. Director, Va. Ctr. for Behavioral Rehab.*, 271 Va. 4, 15 (2006).  We have also held that "[e]ven though involuntary civil commitment is a significant deprivation of liberty to which federal and state procedural due process protections apply, persons subject to these commitment proceedings do not enjoy the same rights attendant to a criminal proceeding."  *Id.*  Nevertheless, decisions from the United States Supreme Court construing the Sixth Amendment right of compulsory process shed light on analogous protections rooted in the Due Process Clause of the Fifth Amendment.

9

designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence." *Id.*

Similarly, in *Taylor v. Illinois*, 484 U.S. 400 (1988), the Court upheld the exclusion of witness testimony when the defendant had not complied with a pretrial discovery requirement to identify his witnesses. The Court stressed the importance of proceeding with caution in excluding a defense witness, but observed that where the omission "was willful and motivated by a desire to obtain a tactical advantage . . . it would be entirely consistent with the purposes of the Compulsory Process Clause simply to exclude the witness' testimony." *Id.* at 414-15.

Consistent with this line of authority, we have held, specifically in the sexually violent predator context, that where a prisoner facing civil commitment

> remains adamant in his refusal to cooperate with the Commonwealth's expert, due process certainly would not require the court to afford the prisoner an undue advantage by permitting him to present evidence based upon a personal interview and examination by his expert, while he is simultaneously denying the Commonwealth's expert the ability to form his diagnosis in the same way.

*Hood v. Commonwealth*, 280 Va. 526, 540-41 (2010).

After being advised of the consequences of refusing to cooperate, Ferrara persisted. The predictable consequences of his refusal to cooperate neither deprived him of a fair trial nor violated due process. Ferrara held the key to unlock the evidence from Dr. Hastings. He chose to keep it in his pocket.

IV.     ANY ERROR BY THE TRIAL JUDGE IN CONSTRUING THE STATUTES WAS HARMLESS.

"Any error that does not implicate the trial court's subject matter jurisdiction is subject to harmless-error analysis." *Spruill v. Garcia*, 298 Va. 120, 127 (2019). "[I]t is the duty of a

reviewing court to consider the trial record as a whole and to ignore errors that are harmless," lest such courts "retreat from their responsibilities, becoming instead 'impregnable citadels of technicality.'" *United States v. Hasting*, 461 U.S. 499, 509 (1983) (alteration and citation omitted). Absent an error of constitutional magnitude, "no judgment shall be arrested or reversed" "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678. "Under the doctrine of harmless error, we will affirm the circuit court's judgment when we can conclude that the error at issue could not have affected the court's result." *Forbes v. Rapp*, 269 Va. 374, 382 (2005).

We conclude that any error by the circuit court in apprehending the source of its authority to exclude evidence from Dr. Hastings was harmless. We reach this result for a number of compelling reasons. First, the respondent in a sexually violent predator commitment proceeding is required to submit to an examination. Code § 37.2-904. This respondent repeatedly refused to do so, even with the benefit of counsel. There is no suggestion that his lack of cooperation stemmed from being indisposed physically or psychologically, or from some other valid reason. As a matter of basic fairness, courts generally will not permit a litigant to engage in gamesmanship by refusing to cooperate with the other party's expert while tendering evidence from their own expert. *See, e.g.*, *Muhammad v. Commonwealth*, 269 Va. 451, 507 (2005) (upholding the trial court's exclusion of the defendant's expert mitigation evidence on the basis that the defendant waived his right to present such evidence by refusing to cooperate with the Commonwealth's expert); *Grattan v. Commonwealth*, 278 Va. 602, 620-21 (2009) (no abuse of discretion in barring a defendant from introducing evidence from his own insanity expert when he had refused to cooperate with the Commonwealth's expert). In addition, the legislature has

expressed a clear policy of excluding evidence in sexually violent predator proceedings when a respondent refuses to cooperate. *See, e.g.*, Code §§ 37.2-904, -906, -907. Finally, the trial court did, in fact, allow Dr. Hastings' reports to be mentioned as impeachment evidence. If the Commonwealth refused to abide by its obligations to turn over evidence in discovery, or flagrantly disregarded its duty to disclose exculpatory evidence and offered no explanation aside from a stubborn refusal, there is little likelihood it would be permitted to introduce evidence of the same kind it willfully withheld. In the face of all of this, it is hard to imagine a trial court exercising its discretion in any way other than the way this trial court did, which was to exclude these reports as substantive evidence and to bar Dr. Hastings from testifying.

Accordingly, any error by the court in construing the statute in this instance was harmless, because the result would have been the same: Dr. Hastings' reports and testimony would have been excluded as substantive evidence, the trial would not have unfolded any differently, and the jury would have reached the same outcome.

## CONCLUSION

We will affirm the judgment of the circuit court.

*Affirmed.*